HAYWARD *v.* MARKER.

1. ADVERSE POSSESSION—BOUNDARIES—EVIDENCE—EJECTMENT.
   Mere recognition of and acquiescence in the wrong line for 15 years by defendant in ejectment action is insufficient to establish title by adverse possession of disputed strip, where there is no such showing as relates to plaintiff and predecessor record title holders.

2. SAME—EVIDENCE.
   Inclusion of disputed strip of rough, undeveloped and tree- and brush-covered lake shore land within area staked out as defendant's plat, coupled with acts of planting trees and flowers, trimming and cutting dead branches, holding pic-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 1 Am Jur, Adverse Possession § 126 *et seq*.
[3] 3 Am Jur, Appeal and Error § 770.

nics, shoring up of lake bank at places, building of road to a building site, payment of taxes for more than 15 years *held*, sufficient evidence upon which to base finding that defendant had acquired title thereto by adverse possession, since it was visible, open, notorious and distinct and presumably hostile.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—EJECTMENT—TAX TITLE—BRIEFS.

Effect of State's acquisition on a tax sale on record title to property involved in action of ejectment is not discussed, where no point is made of it in the briefs.

Appeal from Antrim; Brown (Charles L.), J. Submitted June 12, 1952. (Docket No. 60, Calendar No. 45,472.) Decided October 6, 1952. Rehearing denied December 9, 1952.

Ejectment by Charles L. Hayward and wife against Helen Marker to try title to land. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Harry T. Cook* (*Charles H. Menmuir* and *Jones & Glabach*, of counsel), for plaintiffs.

*James R. Zerafa*, for defendant.

DETHMERS, J. This is a suit in ejectment testing title to a disputed strip of land approximately 89.7 feet in width located within and immediately south of the north line of government lot 3, section 7, T 30 N, R 8 W, in Antrim county, on the west shore of Torch lake.

In 1917 defendant purchased and in 1920 received a deed to government lot 2, situated immediately adjacent to and north of the disputed strip. In 1923 she platted the east portion of lot 2 on the basis of a survey made by the county surveyor. Through error the surveyor staked out the plat as commencing on the north at a line 70 or more feet south of the north line of government lot 2 and extending

south to a line 89.7 feet south of the dividing line between government lots 2 and 3, with the result that the plat encroached by that number of feet on government lot 3. In 1941 plaintiffs purchased and in 1945 received a deed to government lot 3. In 1942 defendant showed plaintiffs the erroneously placed iron stakes which she said marked the south line of her property. Plaintiffs made no objection, having had no previous knowledge of the true location of the line. In 1949 and again in 1950, after defendant had built and occupied a house on the now disputed strip, plaintiffs had surveys made, discovered the error and thereupon brought this suit. From judgment for defendant plaintiffs appeal.

Relying on *Dubois* v. *Karazin*, 315 Mich 598, and cases cited therein, defendant urges that an old, established line, long recognized, acquiesced in, and treated as the true line for a period of more than 15 years ought not to be disturbed on the basis of a new survey. The difficulty with defendant's contention in this regard is that the recognition of and acquiescence in the wrong line for 15 years is only shown to have been on the part of defendant with no such showing as relates to plaintiffs and their predecessors.

The trial court held that defendant had acquired title to the disputed strip by adverse possession for more than the statutory period. The area had been, in the main, rough, undeveloped, and covered with trees and underbrush. Plaintiffs contend that the inclusion of the disputed strip within the area staked out as defendant's plat, coupled with her infrequent acts of planting trees and flowers, cutting dead branches, holding picnics, and shoring up the lake bank at places throughout her plat, without actually dwelling upon the disputed strip until 1947, and defendant's occupation and use of portions of her plat located outside the disputed strip did not con-

stitute open, notorious, continued, hostile and adverse possession of the strip sufficient to ripen into title.

The trial court viewed the premises and described all the witnesses in the case as truthful. On that basis it found that, despite the fact that defendant had not actually dwelt upon the disputed strip for the requisite period, nonetheless, she had, for more than such a period, worked on the strip and planted flowers and trees on it, including a row of red and white pines planted, in 1924 and 1925, near and parallel with the lake shore and running north from defendant's present house; that she had recurrently trimmed and removed dead branches from trees thereon, built a road on the strip leading to the building site, cleared out underbrush, brushed out the creek thereon, cleared a line along the south boundary thereof, shored up the banks of the lake in front of the strip with rocks and boulders, used the property for picnics, et cetera, and paid taxes on the entire plat; that her son had spent several summer vacations on the disputed strip, and that, for more than the statutory period, defendant had not only done all these things on it but had treated it in every respect as a part of her plat. The court determined that defendant's use of the strip had been such as was consistent with the character of the property and that she had devoted it to the use to which it was adapted, all under claim of title; that her possession had been visible, open, notorious and distinct, presumed to be hostile, and sufficient to cause title to ripen in her by adverse possession. The court relied in this connection on *Greene* v. *Anglemire,* 77 Mich 168; *Dubois* v. *Karazin, supra,* and cases cited therein. Applicable also is *Monroe* v. *Rawlings,* 331 Mich 49, and authorities therein cited. We believe the trial court was correct.

: Because no point is made of it in the briefs, we need not pass on the effect of the State's having acquired title to lot 3 on tax sale in 1939, a subject considered in *McCreary* v. *Shields,* 333 Mich 290.

Affirmed, with costs to defendant.

BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.